**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | |
|---|---|
| **CELESTIA CHAPMAN**, | |
| 427 27th Street<br>Huntington, West Virginia 25702 | CASE NO. 2:20-cv-05009 |
| **PLAINTIFF**, | JUDGE |
| v. | MAGISTRATE JUDGE |
| **BRENTLINGER ENTERPRISES**, | **COMPLAINT WITH JURY DEMAND** |
| 6335 Perimeter Loop Road<br>Dublin, Ohio 43017 | |
| **DEFENDANT**. | |

## I.      NATURE OF THE CLAIMS

1.      This is an employment dispute.  Brentlinger Enterprises, better known as Midwestern Auto Group, fired Plaintiff Celestia Chapman because she wanted some extra days off to care for her sister dying of cancer.  After firing Ms. Chapman, this company then opposed Ms. Chapman's unemployment benefits by falsely claiming she had resigned.  When Ms. Chapman hired a lawyer, this company's attorneys threatened her with sanctions if she filed this lawsuit.  Finally, after firing Ms. Chapman, this company refused to let her continue her health insurance under federal law—and then Ms. Chapman herself was diagnosed with cancer after she had to dangerously delay doctor's appointments and treatment due to the lack of insurance.

2.      Defendant violated the Family and Medical Leave Act ("FMLA").  This statute has a little-known provision regarding "in loco parentis" coverage.  Per the U.S. Department of Labor, this provision allows job-protected leave for employees to serve as the primary caregiver for adult siblings who have become incapable of self-care due to a disability.  This is precisely

what Ms. Chapman requested when she specifically asked Defendant for FMLA leave to serve as primary caregiver for her sister dying of cancer.

3.     Defendant also violated the Americans with Disabilities Act ("ADA") and the disability discrimination provisions of Ohio Revised Code Chapter 4112.  These statutes similarly contain a little-known provision regarding associational discrimination.  This provision prohibits discrimination against employees because they associate with a disabled family member.  One of the recognized claims under this provision is the "distraction" theory.  Federal courts have found the "distraction" theory covers Ms. Chapman's exact situation, and that employers like Defendant break the law if they terminate employees because they might take time off to care for a family member with a disability like terminal cancer.

4.     Defendant also engaged in post-employment retaliation in violation of these federal and state statutes.  An employer opposing unemployment benefits for baseless reasons (in this case, knowingly lying about the circumstances of a separation) is a form of retaliation. Employees rightly fear they will be left destitute without the social insurance that unemployment benefits provide.  Moreover, a defense attorney threatening monetary sanctions if the employee files a lawsuit to enforce her right to free from discrimination is a form of retaliation.  As the law recognizes, attorneys are not hatchet men and women for their clients.  The only purpose in communicating a threat of sanctions is to dissuade the suit.  As courts say: either file or do not file the motion for sanctions.

5.     Finally, Defendant violated the Consolidated Omnibus Budget Reconciliation Act ("COBRA").  As if being fired under these circumstances was not enough, Ms. Chapman herself was diagnosed with cancer.  But when Defendant fired Ms. Chapman, it also terminated her health insurance.  Defendant then refused to comply with COBRA and let her continue her health

insurance benefits post-employment. As a result, Ms. Chapman had to dangerously delay her cancer treatments due to the lack of insurance.

6. Accordingly, Ms. Chapman now files this civil action. She seeks to recover for the harm she has suffered, to punish Defendant for its conduct, and to deter Defendant from ever perpetrating its conduct against any other person.

## II. JURISDICTION AND VENUE

7. Pursuant to 28 U.S.C. § 1331, this Court has original jurisdiction over Plaintiff's claims made under federal law because those claims constitute a civil action arising under the Constitution, laws, or treaties of the United States.

8. Pursuant to 28 U.S.C. § 1367, this Court has supplemental jurisdiction over Plaintiff's claims made under state law because those claims are so related to the claims made under federal law that they form part of the same case or controversy under Article III of the United States Constitution.

9. Pursuant to 28 U.S.C. §§ 1332(a)(1) and (c)(1), this Court has original jurisdiction over all of Plaintiff's claims because she is a citizen of West Virginia, Defendant is a citizen of Ohio, and the amount in controversy exceeds seventy-five thousand dollars ($75,000.00).

10. Pursuant to 28 U.S.C. § 1132(e)(1), this Court has original jurisdiction because this is a civil action filed by a participant for violations of the Employee Retirement Income Security Act ("ERISA").

11. Pursuant to Ohio Revised Code Sections 2307.381-.385, and the Due Process Clauses of the federal and Ohio Constitutions, this Court has personal jurisdiction over Defendant because it is a resident of, and has continuous and systematic contacts with, the State of Ohio.

12. Pursuant to 28 U.S.C. § 1391, this Court is the appropriate venue because the Southern District of Ohio is the judicial district in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

13. Pursuant to 28 U.S.C. § 1132(e)(2), this Court is the appropriate venue because the Southern District of Ohio is the judicial district where the plan is administered, where the breach took place, or where a defendant resides or may be found.

14. Pursuant to Rule 82.1 of the Local Civil Rules of the United States District Court for the Southern District of Ohio, the Eastern Division at Columbus is the appropriate division because it serves the counties in which a substantial part of the events or omissions giving rise to the claims for relief occurred.

### III.    PARTIES

15. Plaintiff Celestia Chapman ("Plaintiff" or "Ms. Chapman") is a natural person who is a resident of Cabell County, West Virginia. Defendant Brentlinger Enterprises employed Ms. Chapman as a Finance Manager in Columbus, Ohio from May of 2018 up until it fired her on or about July 17, 2019.

16. Defendant Brentlinger Enterprises ("Defendant" or the "Company") is a for-profit general partnership that formed in the State of Ohio and has its principal place of business in Franklin County, Ohio. Defendant does business as Midwestern Auto Group and is an automobile dealership that specializes in European luxury brands. At all relevant times, Defendant employed fifty or more employees within a seventy-five-mile radius of where it employed Ms. Chapman. Finally, upon information or belief, Defendant is the plan administrator of the Midwestern Auto Group Health and Welfare Plan (the "Health Plan") through which offers group health insurance to its employees.

4

## IV.     FACTS

### A.     Plaintiff's Sister is Diagnosed with Terminal Cancer

17.     In September of 2017, Ms. Chapman's sister, Sharon Edmonson, was diagnosed with Stage 4 non-Hodgkin's lymphoma.  It was terminal.

18.     Ms. Edmonson, at this time, lived in Louisville, Kentucky.

19.     Ms. Chapman, at the time, lived in Melbourne, Florida.

20.     Upon learning of Ms. Edmonson's diagnosis, Ms. Chapman chose to move closer to her sister to help her manage the ordeal of terminal cancer.

21.     As a result, Ms. Chapman looked for a new job that was within driving distance of Louisville, Kentucky.

### B.     Plaintiff's Employment

22.     In May of 2018, Ms. Chapman accepted a full-time job with Defendant because of its closer proximity to her sister dying of cancer.

23.     Defendant hired Ms. Chapman to work as a Finance Manager at Midwestern Auto Group, its luxury car dealership in Dublin, Ohio.  This was a full-time position in which Ms. Chapman often worked more than forty hours per week.

24.     As a Finance Manager, Ms. Chapman was responsible for securing financing for customers and selling products for the Company such as vehicle maintenance plans, vehicle protection plans, and gap insurance.

25.     During Ms. Chapman's employment with Defendant, her job performance always met or exceeded expectations.  In fact, Ms. Chapman was excellent at her job.  She substantially increased Defendant's profits from the Finance Department by promoting and selling products to customers.  She was far better at her job than her predecessor.

26.     During Ms. Chapman's employment with Defendant, its owner Mark Brentlinger would often personally visit Ms. Chapman to praise her job performance.  He would express how "impressed" he was with Ms. Chapman's job performance and say she was doing a "great job."

27.     During Ms. Chapman's employment with Defendant, her regularly scheduled days off were Friday and Sunday.  On one or both days, Ms. Chapman would drive down to Louisville, Kentucky and assist her sister dying of cancer.

**C.     Plaintiff Must Become the Primary Caregiver for Her Sister Dying of Cancer**

28.     In or about May of 2019, Ms. Edmonson's terminal cancer became so debilitating that it completely prevented her from performing life's daily activities.  This included activities such as walking, talking, sitting, standing, and caring for herself.

29.     Upon information or belief, this occurred because Ms. Edmonson's health insurance carrier refused a treatment for her cancer that it deemed "not medically necessary."  Without this treatment, Ms. Edmonson's condition rapidly deteriorated.

30.     Rather than die in hospice care, Ms. Edmonson wanted to spend her final days in her own home.  But, to do that, Ms. Edmonson needed around-the-clock care.

31.     As a result, in or about May of 2019, Ms. Chapman had to become her sister's primary caregiver.  Ms. Chapman was the only family member capable of doing so.  Their mother was eighty years old and, due to her age and other reasons, she was unable to undertake this role and care for Ms. Edmonson.  Further, their father had already passed in 1993.  Additionally, Ms. Chapman's and Ms. Edmonson's other siblings were unable to fulfill this role because they lived too far away; Ms. Chapman was the sibling who lived the closest.  Finally, Ms. Edmonson had also specifically asked Ms. Chapman to become her primary caregiver in her final days of life.

32. The following is a non-exhaustive list of tasks that Ms. Chapman undertook as Ms. Edmondson's primary caregiver:

a. Ms. Chapman took over responsibility for handling her Ms. Edmonson's finances. For instance, Ms. Chapman began managing her sister's assets and ensuring her sister's bills were timely paid. If her sister was unable to pay a bill with her assets, Ms. Chapman used her own money to pay those bills. For instance, Ms. Edmonson's health insurance did not always pay for all care, so Ms. Chapman used her own money to pay for healthcare services. Additionally, Ms. Chapman paid for everyday living expenses, such as food, toiletries, and other household goods. Ms. Chapman also often paid rent for Ms. Edmonson's apartment and other monthly bills.

b. Ms. Chapman took over responsibility for facilitating her sister's medical care. For instance, Ms. Chapman helped obtain the necessary medical care for her sister. She then continued to oversee her sister's medical care to ensure it was adequate. For instance, Ms. Chapman personally assisted Ms. Edmonson in taking her daily medicines to control her pain and discomfort in her final days.

c. Ms. Chapman assisted her sister with life's daily activities that her sister could no longer perform. For instance, Ms. Chapman helped her sister perform simple tasks such as cooking, eating, or dressing when she was too weak to do so personally. Ms. Chapman bathed her sister because she was no longer able to do so. When Ms. Edmonson's cancer caused her to lose control of her bowels, Ms. Chapman dutifully cleaned her sister with the dignity she deserved and helped her reach the bathroom. When, from the depression and anxiety at her impending death, Ms. Chapman's sister became upset, Ms. Chapman held her sister's hand and provided comfort.

d.     Ms. Chapman provided her sister with spiritual support.  Ms. Chapman would pray for, and with, her sister.  Ms. Chapman would discuss their good memories together and remind her of everything God had blessed her with in life.

**D.     Plaintiff's Requests FMLA Leave to Care for Her Dying Sister**

33.     To serve as her sister's primary caregiver, Ms. Chapman needed to do more than just visit her sister on her two days off work.  She needed additional time off during the week.

34.     As a result, in or about May and June of 2019, Ms. Chapman used all of her paid time off so she could also spend additional days caring for her sister in person.

35.     During this time, Ms. Chapman made Defendant—and specifically all of her managers—aware of her sister's terminal cancer, that Ms. Chapman was serving as her sister's primary caregiver, and that she needed to care for her sister in person.  This was done verbally and through text messages.

36.     In or about the end of June of 2019, Ms. Chapman ran out of paid time off.

37.     As a result, in or about early July of 2019, Ms. Chapman specifically asked her manager, Karen Betsacon, for FMLA leave forms.

**E.     Defendant Denies Plaintiff FMLA Leave**

38.     Ms. Betsacon refused to provide Ms. Chapman with any FMLA leave forms.  Ms. Betsacon indicated that, in her view, the FMLA allegedly does not cover siblings.  As a result, Ms. Betsacon denied Ms. Chapman FMLA leave.

39.     In response, Ms. Chapman downloaded the FMLA leave forms from the U.S. Department of Labor's website.  Ms. Chapman then completed the FMLA leave forms and submitted them to Ms. Betsacon.  In those forms, Ms. Chapman specifically stated that she would "act as primary caregiver" for her sister dying of cancer.

8

40.     Additionally, Ms. Chapman texted Ms. Betsacon and other managers informing them that her other sister, Kathy Buford, had been able to obtain FMLA leave to care for Ms. Edmonson.  Ms. Chapman challenged why she could not receive FMLA leave as well.

41.     In response, Ms. Betsacon became very angry with Ms. Chapman.  She accused Ms. Chapman of "calling her out" in front of other managers by sending the group text message. Ms. Chapman denied any ill motive.

42.     Because Defendant refused her FMLA leave, Ms. Chapman responded by asking for a modified work schedule where she would take off Saturdays off in addition to her regular days off on Friday and Sunday.  Ms. Betsacon denied that request.  She also stated that other managers had input on this decision and agreed with her.

43.     In response, Ms. Chapman proposed working Wednesday through Saturday, and instead taking off Sunday, Monday, and Tuesday to care for her sister dying of cancer.

44.     Ms. Betsacon stated the company could accommodate this modified work schedule only temporarily.  Ms. Betsacon indicated she was concerned that Ms. Chapman, by seeking this time off, was too distracted with her sister and would not be a reliable employee.

45.     Ms. Betsacon then told Ms. Chapman that she had consulted with the company's attorneys and they had advised her the FMLA allegedly does not cover siblings.

### F.     Defendant Terminates Plaintiff's Employment

46.     On Wednesday, July 17, 2019, Ms. Chapman was returning from Louisville, Kentucky after caring for her sister dying of cancer.

47.     This time, however, Ms. Chapman was going to be slightly late to the start of her shift.  This is because her other sister, Kathy Buford, had a delayed flight and was thus delayed in relieving Ms. Chapman in caring for their sister Ms. Edmonson.

48.     Ms. Chapman dutifully informed Ms. Betsacon via text message that she was going to be late to work.  This complied with Defendant's policies.

49.     Ms. Chapman had no prior discipline for tardiness or attendance.

50.     Nevertheless, Ms. Betsacon replied with a text message firing Ms. Chapman.  The text message read "as we discussed, this was our reservation re: your continued employment . . . at this time it is best, for both you and MAG, to terminate your employment."

**G.     Defendant Challenges Plaintiff's Unemployment Benefits and Lies**

51.     After Defendant fired Ms. Chapman, she applied for unemployment benefits.

52.     Defendant challenged Ms. Chapman's application.  Ms. Betsacon told ODJFS that Ms. Chapman had allegedly quit, and no one had fired her.  This was an intentional lie.

53.     Ms. Chapman responded to ODJFS by providing them a copy of Ms. Betsacon's text message in which she fired Ms. Chapman.

54.     As a result, ODJFS did not believe Ms. Betsacon and instead award unemployment benefits to Ms. Chapman.

**H.     Defendant Threatens Plaintiff with Sanctions**

55.     After Defendant fired Ms. Chapman, she secured counsel to pursue her rights.

56.     Ms. Chapman's attorneys sent a litigation threat letter to Defendant.

57.     Robert Harris, of the Vorys law firm, responded.  He sent a letter claiming Ms. Chapman's claims allegedly had no basis and indicating Defendant would seek sanctions if she filed a lawsuit.  He is wrong, knew of the facts and law that support Ms. Chapman's claims, and intended for his sanctions threat to dissuade Ms. Chapman from filing this lawsuit.

58.     Ms. Chapman was made aware of Mr. Harris' threat on behalf of Defendant.  It caused her to reconsider whether to pursue her rights and caused her emotional distress. Nevertheless, Ms. Chapman chose to proceed.

### I.     Defendant Refuses to Comply with COBRA

59.     Ms. Chapman attempted to enroll in the Health Plan after becoming eligible.

60.     On or about August of 2018, Ms. Chapman timely completed and submitted forms electing health insurance, but Defendant claimed it allegedly lost her completed forms.

61.     After Ms. Chapman received notice of the allegedly lost forms, she promptly completed and submitted a second set of forms that once again elected health insurance.

62.     Defendant responded by telling Ms. Chapman that her enrollment period had allegedly expired and that she would have to wait until the following year to receive health insurance under the Health Plan.

63.     In May of 2019, Ms. Chapman attended an employee benefits meeting.

64.     During this meeting, Ms. Chapman timely completed and submitted the forms electing health insurance through the Health Plan.

65.     Ms. Chapman received health insurance cards and documentation from Medical Mutual, dated July 1, 2019, confirming her enrollment in the Health Plan.

66.     Ms. Chapman was a covered employee under the Health Plan and her health insurance coverage began on July 1, 2019.

67.     As a result of Defendant terminating Ms. Chapman's employment on July 17, 2019, she was entitled to receive notice of COBRA benefits on or before August 31, 2019.

68.     Defendant never sent Ms. Chapman a notice of COBRA benefits.

69.    Had Ms. Chapman received the COBRA notice, she would have exercised her right to continued health insurance coverage under the Health Plan.

70.    Ms. Chapman was subsequently diagnosed with malignant melanoma. Due to the lack of health insurance, she had to dangerously delay her cancer treatments.

### J.    Plaintiff Files a Charge of Discrimination

71.    On November 26, 2019, Ms. Chapman timely filed a charge of discrimination with the Equal Employment Opportunity Commission ("EEOC") alleging violations of the ADA.

72.    On January 29, 2020, Ms. Chapman timely filed a charge of discrimination with the EEOC alleging post-employment retaliation in violation of the ADA.

73.    On June 26, 2020, the EEOC mailed Ms. Chapman her Dismissal and Notice of Rights letters for both charges of discrimination (collectively, the "Right to Sue Letters"). True and accurate copies of the Right to Sue Letters are attached as Exhibit 1 to this Complaint.

### V.    CLAIMS FOR RELIEF

### COUNT I

### Violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2611, et seq. (Interference)

74.    All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

75.    Plaintiff was at all relevant times an "eligible employee" within the meaning of 29 U.S.C. § 2611(2).

76.    Defendant was at all relevant times an "employer" within the meaning of 29 U.S.C. § 2611(4).

77.    Consistent with 29 U.S.C. §§ 2611(11), 2611(12), and 2612(a)(1)(C), Plaintiff was entitled to leave to care for her sister's serious health condition.

78.     Plaintiff notified Defendant of her intention to take FMLA leave.

79.     Defendant denied Plaintiff the full benefits of her FMLA leave.

80.     As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in amount to be determined at trial.

81.     Consistent with 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to liquidated damages because Defendant did not act in good faith and did not have reasonable grounds for believing that its actions complied with the law.

82.     Consistent with 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count I.

## COUNT II

### Violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2611, et seq.
### (Retaliation – Termination of Employment)

83.     All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

84.     Defendant was at all relevant times an "employer" within the meaning of 29 U.S.C. § 2611(4).

85.     Plaintiff availed herself of a right protected by the FMLA.

86.     Defendant knew of Plaintiff's protected activity.

87.     Plaintiff was subjected to a materially adverse employment action; namely, her termination of employment.

88.     A causal connection exists between Plaintiff's exercise of protected activity and the adverse employment action she suffered.

89.     As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in amount to be determined at trial.

90.    Consistent with 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to liquidated damages because Defendant did not act in good faith and did not have reasonable grounds for believing that its actions complied with the law.

91.    Consistent with 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count II.

## COUNT III

**Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.**
**(Associational Disability Discrimination – Termination of Employment)**

92.    All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

93.    Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 12111(4).

94.    Plaintiff's sister at all relevant times had a "disability" within the meaning of 42 U.S.C. § 12102(1).

95.    Defendant was at all relevant times an "employer" within the meaning of 42 U.S.C. § 12111(5).

96.    Pursuant to 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5, Plaintiff exhausted her administrative remedies.

97.    Defendant violated 42 U.S.C. § 12112(a) and (b)(4) when it terminated Plaintiff's employment because she associated with her disabled sister.

98.    As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in amount to be determined at trial.

99.     Consistent with 42 U.S.C. § 12117, 42 U.S.C. § 2005e-5, and 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

100.     Consistent with 42 U.S.C. § 12117 and 42 U.S.C. § 2005e-5, Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count III.

**COUNT IV**

**Violation of Ohio Revised Code Sections 4112.02 and/or 4112.99**
**(Associational Disability Discrimination – Termination of Employment)**

101.     All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

102.     Plaintiff was at all relevant times an "employee" within the meaning of Ohio Revised Code Section 4112.01(A)(3).

103.     Plaintiff's sister at all relevant times had a "disability" within the meaning of Ohio Revised Code Section 4112.01(A)(13).

104.     Defendant was at all relevant times an "employer" within the meaning of Ohio Revised Code Section 4112.01(A)(2).

105.     Defendant violated Ohio Revised Code Sections 4112.02 and/or 4112.99 when it terminated Plaintiff's employment because she associated with her disabled sister.  Alternatively, Plaintiff's association with her disabled sister was a motivating factor in the decision by Defendant to terminate Plaintiff's employment.

106.     As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

107.     Consistent with Ohio Revised Code Section 2315.21, Plaintiff is entitled to punitive damages because the actions or omissions of Defendant demonstrate malice or

aggravated or egregious fraud, and/or Defendant as principal or master knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

108.    Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count IV.

## COUNT V

**Violation of the Family and Medical Leave Act, 29 U.S.C. §§ 2611, et seq.**
**(Post-Employment Retaliation – Threatening Monetary Sanctions and Opposing**
**Unemployment Compensation Benefits By Making False Statements)**

109.    All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

110.    Defendant was at all relevant times an "employer" within the meaning of 29 U.S.C. § 2611(4).

111.    Plaintiff availed herself of a right protected by the FMLA.

112.    Defendant knew of Plaintiff's protected activity.

113.    Defendant subjected Plaintiff to the following materially adverse employment actions: (1) Defendant opposing her application for unemployment benefits by making false statements; and (2) Defendant threatening monetary sanctions if she filed this lawsuit.

114.    A causal connection exists between Plaintiff's exercise of protected activity and the materially adverse employment actions she suffered.

115.    As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in amount to be determined at trial.

116.    Consistent with 29 U.S.C. § 2617(a)(1)(A)(iii), Plaintiff is entitled to liquidated damages because Defendant did not act in good faith and did not have reasonable grounds for believing that its actions complied with the law.

117.    Consistent with 29 U.S.C. § 2617(a)(3), Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count V.

## COUNT VI

**Violation of the Americans with Disabilities Act, 42 U.S.C. §§ 12101, et seq.**
**(Post-Employment Retaliation – Threatening Monetary Sanctions and Opposing**
**Unemployment Compensation Benefits By Making False Statements)**

118.    All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

119.    Plaintiff was at all relevant times an "employee" within the meaning of 42 U.S.C. § 12111(4).

120.    Defendant was at all relevant times an "employer" within the meaning of 42 U.S.C. § 12111(5).

121.    Pursuant to 42 U.S.C. § 12117 and 42 U.S.C. § 2000e-5, Plaintiff exhausted her administrative remedies.

122.    Plaintiff engaged in the activity protected by 42 U.S.C. § 12203.

123.    Defendant knew of Plaintiff's protected activity.

124.    Defendant violated 42 U.S.C. § 12203 by subjecting Plaintiff to the following materially adverse employment actions because Plaintiff engaged in the protected activity set forth in the statute: (1) Defendant opposing her application for unemployment benefits by making false statements; and (2) Defendant threatening monetary sanctions if she filed this lawsuit.

125.    A causal connection exists between Plaintiff's exercise of protected activity and the materially adverse employment actions she suffered.

126.    As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in amount to be determined at trial.

127.    Consistent with 42 U.S.C. § 12117, 42 U.S.C. § 2005e-5, and 42 U.S.C. § 1981a, Plaintiff is entitled to punitive damages because Defendant acted with malice or with reckless indifference to the federally protected rights of Plaintiff.

128.    Consistent with 42 U.S.C. § 12117 and 42 U.S.C. § 2005e-5, Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count VI.

## COUNT VII

**Violation of Ohio Revised Code Sections 4112.02 and/or 4112.99
(Post-Employment Retaliation – Threatening Monetary Sanctions and Opposing
Unemployment Compensation Benefits By Making False Statements)**

129.    All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

130.    Plaintiff was at all relevant times a "person" within the meaning of R.C. 4112.01(A)(1).

131.    Defendant was at all relevant times a "person" within the meaning of R.C. 4112.01(A)(1).

132.    Plaintiff engaged in the activity protected by R.C. 4112.02(I).

133.    Defendant violated R.C. 4112.02(I) and/or 4112.99 by subjecting Plaintiff to the following materially adverse employment actions because Plaintiff engaged in the protected activity set forth in the statute: (1) Defendant opposing her application for unemployment

benefits by making false statements; and (2) Defendant threatening monetary sanctions if she filed this lawsuit.

134.    As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial but exceeding $25,000.

135.    Consistent with R.C. 2315.21, Plaintiff is entitled to punitive damages because the actions or omissions of Defendant demonstrate malice or aggravated or egregious fraud, and/or Defendant as principal or master knowingly authorized, participated in, or ratified the actions or omissions that so demonstrate.

136.    Consistent with the rule in *Columbus Finance, Inc. v. Howard*, 42 Ohio St.2d 178, 71 Ohio App.2d 174, 327 N.E.2d 654 (1975), and because Plaintiff is entitled to punitive damages, Plaintiff is entitled to reasonable attorneys' fees incurred in pursuing Count VII.

**COUNT VIII**

**Violations of the Employee Retirement Income Security Act as Amended by the Consolidated Omnibus Budget Reconciliation Act 29 U.S.C. § 1132(c)(1) and 29 U.S.C. §§ 1161 et seq.**

**(Failure to Provide Required Notice of Right to Elect Continuation Coverage)**

137.    All of the preceding paragraphs are incorporated by reference as if fully restated in this paragraph.

138.    Plaintiff was at all relevant times a "participant" within the meaning of 29 U.S.C. § 1132(a)(1).

139.    Plaintiff was at all relevant times a "covered employee" within the meaning of 29 U.S.C. § 1167(2).

140.    Plaintiff was at all relevant times a "qualified beneficiary" within the meaning of 29 U.S.C. § 1167(3).

141.    Defendant was at all relevant times an "employer" within the meaning of 29 U.S.C. § 1002(5) and 29 U.S.C. § 1167(4).

142.    Defendant was at all relevant times the "plan sponsor" within the meaning of 29 U.S.C. § 1002(16).

143.    Defendant was at all relevant times the "administrator" within the meaning of 29 U.S.C. § 1002(16).

144.    Defendant violated 29 U.S.C. § 1132(c)(1) when it failed to meet the requirements of 29 U.S.C. § 1166(2) and 29 U.S.C. § 1166(4) with respect to Plaintiff.

145.    As a proximate result of Defendant's actions, Plaintiff has been and continues to be damaged in an amount to be determined at trial.

146.    Consistent with 29 U.S.C. § 1132(c)(1) and 29 C.F.R. § 2575.502c-1, Plaintiff is entitled to statutory damages in the amount of $110 a day from the date of Defendant's violation.

147.    Consistent with 29 U.S.C. § 1132(g), Plaintiff is entitled to reasonable attorneys' fees and costs incurred in pursuing Count VIII.

### VI.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff requests judgment in her favor on all claims in this Complaint and requests the following relief:

A.    Economic compensatory damages in an amount to be determined at trial;

B.    Non-economic compensatory damages in an amount to be determined at trial;

C.    Liquidated, treble, punitive, or other exemplary damages in an amount to be determined at trial;

D.    Reinstatement or, in the alternative, front pay in an amount to be determined;

E.    Reasonable attorneys' fees incurred in pursuing the claims against Defendant;

F.     All costs and expenses incurred in pursuing the claims against Defendant;

G.     Pre- and post-judgment interest; and

H.     All other legal and equitable relief this Court and/or a jury determines is appropriate.

## VII.    JURY DEMAND

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all claims and issues that are triable.

Respectfully submitted,

By:  /s/ Jason E. Starling
Jason E. Starling (Ohio Bar No. 0082619), Trial Attorney
Kevin R. Kelleher (Ohio Bar No. 0099167)
WILLIS SPANGLER STARLING
4635 Trueman Boulevard, Suite 100
Hilliard, Ohio 43026
Telephone: (614) 586-7915
Facsimile: (614) 586-7901
jstarling@willisattorneys.com
kkelleher@willisattorneys.com

Sonia T. Walker (Ohio Bar No. 0070422)
CALIG LAW FIRM, LLC
513 East Rich Street, Suite 210
Columbus, Ohio 43215
Telephone: (614) 252-2300
Facsimile: (614) 252-2558
swalker@caliglaw.com

*Attorneys for Plaintiff Celestia Chapman*